[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] TERMINATION OF AUTOMATIC STAY ON APPEAL
Plaintiff, William J. Zisk, has appealed from the judgment in favor of the defendant, Walkley Heights Associates, quieting title to certain real estate in Walkley Heights Associates and ordering the discharge of a lis pendens plaintiff placed on the land records in June 1998. Memorandum of Decision, May 24, 2002. [126] By virtue of plaintiff's appeal, any proceeding to enforce or carry out the judgment has been automatically stayed. P.B. § 61-11 (a). Thus, the lis pendens has not been discharged and remains in effect. CT Page 8510
Defendant, Walkley Heights Associates, has moved for a termination of the automatic stay in order to effect an immediate discharge of the lis pendens. P.B. § 61-11 (c) and (d). The rules provide:
 "Termination of a stay may be sought in accordance with subsection (d) of this rule. If the judge who tried the case is of the opinion that (1) . . . the appeal is taken, only for delay or (2) the due administration of justice so requires, the judge may at any time after a hearing, upon motion or sua sponte, order that the stay be terminated." P.B. § 61-11 (c).
The court is of the firm opinion that the appeal has been taken solely for the purposes of delay and that the due administration of justice requires the immediate termination of the automatic stay provided by P.B. § 61-11 (a). The court details below the reason for its opinion.
Plaintiff, William J. Zisk, brought this action to quiet title to a 32 acre parcel of land located in Haddam. William J. Zisk claims some undefined ownership interest. After a trial, the court rendered judgment for the defendant herein, Walkley Heights Associates. The court found that plaintiff had absolutely no legal interest in the property. The court entered judgment quieting and settling title to the property in Walkley Heights Associates. Memorandum of Decision, May 24, 2002. [126] Since plaintiff had no legally cognizable interest in the property, the court ordered that the lis pendens plaintiff had placed on the land records in June or July 1998 be discharged.
The judgment in this case, is in accord with, and to some extent is dependent on, a previous judgment in a partition action regarding this property in which plaintiff William J. Zisk had been defendant and Walkley Heights Associates' immediate predecessor in title, High Street Associates, had been plaintiff. High Street Associates v. William J.Zisk, Superior Court, Judicial District of Middlesex, CV 91 62496 (May 5, 1993, Spallone, J.T.R.); affirmed, 34 Conn. App. 922 (1994); certification denied, 231 Conn. 910 (1994); certiorari denied sub nom.,Zisk v. High Street Associates, 513 U.S. 1192 (1995); rehearing denied,514 U.S. 1078 (1995).
The land in dispute is part of a 100 acre tract of land owned by the defendant Walkley Heights Associates. This land was acquired from 3 sources. The 32 acre plot in dispute here was acquired in two stages by defendant's immediate grantor, High Street Associates. An undivided 5/6 CT Page 8511 interest in the 32 acre plot was acquired in May 1991 by High Street Associates from plaintiff's mother and two brothers. Plaintiff, William J. Zisk, owned the other undivided 1/6 interest. Defendant's immediate predecessor, High Street Associates brought an action to partition the property. High Street Associates prevailed in that action. The court ordered a partition sale. High Street Associates was the successful bidder. By virtue of the Committee deed, High Street Associates acquired title to the whole property. The court ordered that $42,422 be credited to plaintiff from the partition sale proceeds for his undivided 1/6 interest.
High Street Associates also acquired two other pieces of land which when combined with the land acquired from the Zisks make up a tract of roughly 100 acres. High Street Associates conveyed the 100 acre tract to Walkley Heights Associates on October 30, 1996.
Walkley Heights Associates has the 100 acre property on the market for $850,000. It has received two offers for that amount. It has not entered into a contract for the sale because of the pendency of this action and the lis pendens filed by plaintiff William J. Zisk. Consummation of a sale of the property is being held up by the presence of plaintiff William J. Zisk's lis pendens.
If the 100 acre property were sold now for $850,000, Walkley Heights estimates it would realize a profit of approximately $250,000. There are purchase money mortgages to each of the parties from whom High Street Associates acquired the property. For instance, the 32 acres acquired from the Zisk is subject to a $186,000 mortgage; it is without interest. There are purchase money mortgages on the other two parcels. The interest on these mortgages are in the order of $4,000 and $40,000 per year.
There is a mortgage on the whole 100 acre tract to Citizens Bank; the principal balance is $525-530,000. The purchase money mortgages have been subordinated to the Citizens Bank mortgage. Citizens Bank is foreclosing. Trial is imminent. The carrying costs for this mortgage exceed $40,000 per year. Furthermore, Citizens' attorneys fees and expenses to date exceed $50,000; Walkley Heights Associates is liable for these expenses. Because of the interest due on the various mortgages, taxes, and the like, Walkley Heights Associates' equity is being eroded by at least $7,000 per month, or well over $225 per day.
Plaintiff, William J. Zisk, filed his appeal on the afternoon of the last day permissible, i.e., June 13, 2002, the twentieth day. P.B. § 63-1. William J. Zisk has filed a Preliminary Statement of Issues setting forth his claims of error. It provides:
CT Page 8512 The trial court erred in that:
 (1) The decision was against the evidence and against the law;
(2) The trial court did not follow the dictates of CGS35-1;
 (3) The trial court in making his decision used a prior case, namely, Steven Rocco as attorney in fact for Mary A Zisk, Edward J. Zisk, Donald R. Zisk and Marion A. Krivanec, Docket No. CV-89-56040 vs. William J. Zisk wherein the case was terminated by the granting of a summary judgment in favor of the defendant William J. Zisk with Honorable Richard T. O'Connell presiding on March 7, 1991;
 (4) The trial court erred by using the finding of the court in a petition for partition action wherein High St. Associates was plaintiff and William J. Zisk was defendant in CV-91-0062496S;
 (5) The court found title in the plaintiff when in fact title at the time of the commencement of the action at bar was in Edward, Mary, Donald and Marion Krivanec names;
 6) A finding of Res Adjudicata by the court in that the issues in the case at bar were the same as found in the case of High St. Associates vs. William J. Zisk CV-91-0062496S;
 (7) The court in its finding that the plaintiff had no interest in the property because the plaintiff's mother allegedly made out a Will dated 8/3/89 which purportedly left out the plaintiff even though said Will was now made a part of the court record in the case at bar;
 (8) In coming to the conclusion that Res Adjudicata applied in the case at bar, the court used the issues allegedly raised by the defendant in his counter claim in the petition action of CV-91-0062496S, which issues were in fact never adjudicated;
(9) The plaintiff filed a motion dated April 11, 2002 to terminate stay and order discharging lis pendens orCT Page 8513 requiring bond for appeal which was never given a hearing even though the issues contained therein were acted upon at the end of the trial on April 9, 2002;
 (9a) Said action is in violation of due process and acts as a deterrent to ones inviolate right of appeal;
 (10) The court in its finding that High St. Associates was in existence at the time of the conveyance from Edward, Donald and Mary Zisk on May 8, 1991 relied on Exhibit D, namely which was filed in 1992, which was certainly no evidence that the partnership known as High St. Associates was in existence in 1991;
 (11) The court further made a finding based on the alleged issues raised in the defendant's counter claim in the petition action CV-91-0062496 which in fact the counter claim was never addressed and the Judge erred in using same as basis for his decision of Res Adjudicata;
 (12) The trial court erred in finding that the purported Will of Mary A. Zisk dated August 3, 1989 was admitted to Probate Court of Placer Country in California — see Exhibit H.
 (13) The court in the case at bar erred in concluding a finding of Res Adjudicata relating to issues in defendants seven special defenses dated 9/27/91 and defendants counter claim dated 11/23/92 in the prior petition action No. CV91-0062496, High St. Associates vs. William J. Zisk, when in fact said issues were not ruled upon by the court.
Preliminary Statement of Issues, May 11, 2002.
The court briefly reviews each of the claims and assesses the merits of each of them.
 (1) The decision was against the evidence and against the law;
This catch all claim needs no discussion; it is totally lacking in substance and particularity.
CT Page 8514 (2) The trial court did not follow the dictates of CGS35-1;
Plaintiff says this is the claim upon which he relies the most. Transcript of Proceedings, April 9, 2002, p. 3. This claim is based on the erroneous premise that a general partnership does not exist until it files a Certificate of Adoption of Trade Name. C.G.S. § 35-1. The claim has no merit in law or logic. It was found merit less in the prior action and in this case.
 (3) The trial court in making his decision used a prior case, namely, Steven Rocco as attorney in fact for Mary A Zisk, Edward J. Zisk, Donald R. Zisk and Marion A. Krivanec, Docket No. CV-89-56040 vs. William J. Zisk wherein the case was terminated by the granting of a summary judgment in favor of the defendant William J. Zisk with Honorable Richard T. O'Connell presiding on March 7, 1991;
The case referred to, Steven Rocco as attorney in fact for Mary A Zisk, Edward J. Zisk, Donald R. Zisk and Marion A. Krivanec, Docket No. CV-89-56040 vs. William J. Zisk, was not brought to the attention of the court in this case. It was not relied upon or even mentioned by the court in its decision. Memorandum of Decision, May 24, 2002. [126] The parties to that action were not identical or in privity to the parties in this action.
 (4) The trial court erred by using the finding of the court in a petition for partition action wherein High St. Associates was plaintiff and William J. Zisk was defendant in CV-91-0062496S;
The court found that action had preclusive effect for many of the issues in this case. Plaintiff had acknowledged that the prior case involved the same land and that plaintiff was asserting the same interests in the land as he had claimed in the prior action. Transcript of Proceedings, April 9, 2002, p. 2; Memorandum of Decision, May 24, 2002, p. 10. [126]
 (5) The court found title in the plaintiff when in fact title at the time of the commencement of the action at bar was in Edward, Mary, Donald and Marion Krivanec names;
This action began by a Complaint dated June 9, 1998 returnable to this court on July 14, 1998. By virtue of the judgment in the prior action, title to the disputed land had vested in High Street Associates. High CT Page 8515 Street Associates quit claimed the property to Walkley Heights Associates on October 30, 1996. Exhibit 9. Plaintiff's statement that this court found title to the property was in the plaintiff [William J. Zisk] when this action commenced is just plain false. The court made no such finding.
 (6) A finding of Res Adjudicata by the court in that the issues in the case at bar were the same as found in the case of High St. Associates vs. William J. Zisk CV-91-0062496S;
This claims lacks specificity and substance. The Memorandum of Decision, May 24, 2002 [126] detailed its findings and conclusions regarding res judicata. The court had asked plaintiff's counsel: "Are the same interests being claimed by Mr. Zisk in this case the same interests in the same land that he made in his counterclaim in the partition action?" Plaintiff's counsel responded: "I would say it would be the same, Your Honor." In view of that colloquy, some findings of res judicata were inevitable. Without specificity by plaintiff, the court cannot address in any greater detail here his claims of error regarding res judicata.
 (7) The court in its finding that the plaintiff had no interest in the property because the plaintiff's mother allegedly made out a Will dated 8/3/89 which purportedly left out the plaintiff even though said Will was not made a part of the court record in the case at bar;
The will referred to was admitted to probate in California where May Zisk resided immediately before her death. See Exhibit A. That exhibit also contained a copy of Mary Zisk's August 3, 1989 will. Contrary to plaintiff's assertion, a copy of the will was a part of the record in this case. Furthermore, it was plaintiff's burden to show he had a legally cognizable interest in the property. The evidence did not establish any such interest.
 (8) In coming to the conclusion that Res Adjudicata applied in the case at bar, the court used the issues allegedly raised by the defendant in his counter claim in the petition action of CV-91-0062496S, which issues were in fact never adjudicated;
Again, this claims demonstrates plaintiff's error strewn, selective CT Page 8516 knowledge of the details of the prior case. In that case the trial court held in part:
 "The court finds that the defendant has failed to prove the allegations in his counterclaim and finds the issues on all four counts of same for the plaintiff [High Street Associates]. Judgment should enter for the plaintiff [High Street Associates] on all counts of the defendant's [William J. Zisk's] counterclaim." High Street Associates v. William J. Zisk, Memorandum of Decision, May 5, 1993, p. 5. ((130))
 (9) The plaintiff filed a motion dated April 11, 2002 to terminate stay and order discharging lis pendens or requiring bond for appeal which was never given a hearing even though the issues contained therein were acted upon at the end of the trial on April 9, 2002;
The defendant filed two applications for termination of automatic stay. They were the same in substance. As mandated by P.B. § 61-11 (c), the court held a hearing to determine if the stay should be terminated on June 26, 2002. Plaintiff through counsel participated in the June 26, 2002 hearing. The court's decision on same is contained in this memorandum
 (9a) Said action is in violation of due process and acts as a deterrent to ones inviolate right of appeal;
This contention lacks merit. Termination of the automatic stay does not "moot the justiciability of a pending appeal." Preisner v. Aetna Casualty Surety Co., 203 Conn. 407, 414-415 (1987). What constitutes due process in any given situation is dependent on the circumstances. "[D]ue process is flexible and calls for such procedural protections as the particular situation demands. Morrissey v. Brewer, 408 U.S. 474, 481,92 S.Ct. 2593, 33 L.Ed.2d 484 (1972)." Pincheck v. Dept of Public Health,65 Conn. App. 201, 209 (August 21, 2001); certification denied,258 Conn. 928 (October 10, 2001). The rules relating to appellate procedure are adopted by the justices of the Supreme Court and the judges of the Appellate Court. P.B. § 86-1. These include the rules regarding the automatic stay on appeal, termination of such stay, and the review thereof. Surely the justices and judges were aware of the due process requirement in such instances. In fact, the justices and judges afforded due process protection in enacting P.B. § 61-11 and related sections requiring a hearing, etc., before the automatic stay on appeal CT Page 8517 is terminated. Further, the rules provide for a review of any action taken pursuant to § 61-11 (c) and (d).
 (10) The court in its finding that High St. Associates was in existence at the time of the conveyance from Edward, Donald and Mary Zisk on May 8, 1991 relied on Exhibit D, namely which was filed in 1992, which was certainly no evidence that the partnership known as High St. Associates was in existence in 1991;
The statement is untrue. Exhibit D, High Street Associates' Return of Income (Form 1065) for 1992 played no part in the court's determination that High Street Associates had been in existence long before May 1991. The court specifically relied on the unchallenged, uncontroverted, uncontradicted testimony of Steven A. Rocco that High Street Associates had been formed in 1989. Transcript of Proceedings, April 9, 2002, p. 32-33. Memorandum of Decision, May 24, 2002, p. 40. [126]
 (11) The court further made a finding based on the alleged issues raised in the defendant's counter claim in the petition action CV-91-0062496 which in fact the counter claim was never addressed and the Judge erred in using same as basis for his decision of Res Adjudicata;
This is just plain false. In its memorandum of decision in the prior action, the court specifically found against William J. Zisk on his counterclaims, one of which was to quiet title in himself.
 "The court finds that the defendant has failed to prove the allegations in his counterclaim and finds the issues on all four counts of same for the plaintiff. Judgment should enter for the plaintiffs on all counts of the defendant's counterclaim." High Street Associates v. William J. Zisk, Memorandum of Decision, May 5, 1993, p. 5. ((130))
 (12) The trial court erred in finding that the purported Will of Mary A. Zisk dated August 3, 1989 was admitted to Probate Court of Placer Country in California — see Exhibit H.
This is an evidentiary matter. The credible exhibit evidence conclusively showed the will had been admitted to probate in California. Plaintiff inconsistently argues in this case that he has appealed in CT Page 8518 California the admission of the will to probate. If he has appealed the admission of the will, it must have been admitted. Oh! What's a little inconsistency?
 (13) The court in the case at bar erred in concluding a finding of Res Adjudicata relating to issues in defendants seven special defenses dated 9/27/91 and defendants counter claim dated 11/23/92 in the prior petition action No. CV91-0062496, High St. Associates vs. William J. Zisk, when in fact said issues were not ruled upon by the court.
As to plaintiff's erroneous repeated assertion that the issues raised by his counterclaims in the prior action were not decided therein, see comments under #11, above.
In the prior action, the court entered judgment for plaintiff (High Street Associates) on its complaint. "The court finds the issues on the plaintiff's complaint for the plaintiff and a judgment of partition should enter." Under our rules, "[f]acts which are consistent with [plaintiff's] such statements [of fact in the complaint] but show, notwithstanding, that the plaintiff has no cause of action, must be specifically alleged." P.B. § 10-50. The court's finding for the plaintiff (High Street Associates) on its complaint means the court rejected the special defenses. In finding for the plaintiff (High Street Associates) on the complaint, the court found that despite the special defenses the plaintiff had plead and proved a valid cause of action. The court implicitly held there was no merit to the special defenses.
The issues listed in plaintiff preliminary statement of issues for appeal have for the most part been rejected in the prior action. Any issue not specifically rejected in the prior action must be rejected in this appeal because the doctrine of res judicata bars not only issues raised in the prior action but also issues which could have been raised.
Plaintiff, through his attorney, has objected to the request for termination of the automatic stay. In it plaintiff relies on three reasons quoted below:
a) The appeal is not taken for the purpose of delay inasmuch as the plaintiff's action to quiet title is brought on the foundation that within the title survey to the property in question are two deeds wherein the grantee is a fictitious trade name but did not file a certificate of trade name with the Haddam Town Clerk's Office in accordance with Section 35-1 CGS. CT Page 8519
 b) The administration of justice requires that the appellate court consider the affect of Section 35-1 CGS on the two deeds within the defendant's claim to the title is tarnished by the grantee's being trade names wherein the certificate required by Section 35-1 was not filed until after the property transfer took place by requiring a bank to pursue the right to appeal would in effect be a bar to his constitutional right to appeal.
 c) The defendant had made a motion for the release of the Lis Pendens now on file in the Haddam Town Clerk's Office before Judge Wolven and was turned down at that point. Objection, June 25, 2002. 
The grounds designated "a" and "b" are the same as the plaintiff listed in his Preliminary Statement of Issues on appeal relating to the existence of High Street Associates and Walkley Hill Associates when the property was conveyed to these partnerships. Exhibits 3 and 9. Again, plaintiff relies on C.G.S. § 35-1. This issue was decided in the previous case. And, in the previous case plaintiff told the Appellate Court "The timing of the filing of the trade name certificates, while not determinative of when a partnership is formed. . . ." Reply Brief of William J. Zisk Defendant-Appellant September 10, 1993. Section35-1 is wholly irrelevant to the issues in this case. That a trade name certificate had not been filed when the partnership was deeded the property does not render the partnership a fictitious grantee. The fictitious grantee issue was decided against the plaintiff in the previous case.
In "c," plaintiff states that the court (Wolven, J.) had turned down a previous application to release the lis pendens. That occurred before trial on the merits. Plaintiff had been non-suited. Defendant moved to discharge the lis pendens. Before that motion came before the court, plaintiff cured the non-suit and the court therefore properly refused, at that stage, to release the lis pendens. Now, the court has entered judgment after a trial on the merits and ordered the lis pendens discharged.
Plaintiff has filed a pro se appearance in addition to the appearance of counsel. Plaintiff has filed his own pro se objection to the termination of the automatic stay. In it, plaintiff states he bases his objection on the following:
1. Plaintiff William J. Zisk has an inviolate constitutional right of due process to appeal an adverse CT Page 8520 decision by the court.
 2. The defendant has previously requested a discharge of plaintiffs Lis Pendens, found in Volume 218, page 375 of the land records of the Town of Haddam, which previously was denied by the Honorable Carol Wolven on February 7, 2002.
 3. Plaintiff William J. Zisk solely paid the entire property taxes on the 32 acre Zisk family intestate estate located at 106 High Street, Higganum, Connecticut, during the tax years of 1991 to 1994.
 4. Steven A. Rocco, individually, and as attorney in fact for Mary A. Zisk, Edward J. Zisk, Marion A. Krivanec, and Donald R. Zisk, filed a first partition action against then defendant William J. Zisk, pertaining to the entire 32 acre Zisk family intestate estate located at 106 High Street, Higganum, Connecticut on September 13, 1989 (Middlesex Superior Court Docket No CV89-0056040S). The Honorable Richard T. O'Connel granted a summary judgment on March 7, 1991 in favor of the defendant William J. Zisk, due to the fact that Steven A. Rocco was not a legal owner of any part of the Zisk family estate. The summary judgment became final and was not appealed.
 5. On June 4, 1991, the alleged fictitious partnership of High Street Associates filed an identical partition action in Middlesex Superior Court, Docket No. CV 910062496S, again naming William J. Zisk as defendant, which involved the same identical Zisk family intestate estate at 106 High Street.
 6. On September 27, 1991, then defendant William J. Zisk filed his answer and seven (7) special defenses, asserting res judicata and collateral estoppel and lack of legal capacity and standing of then plaintiff High Street Associates to assert the matters alleged in the complaint, which were not ruled upon by the court.
7. On November 23, 1992, then defendant William J. Zisk filed a counterclaim, asserting conspiracy, fraud, tortious conduct, slander of title, personal emotional and economic duress and coercion through litigation in Connecticut, which also was not ruled CT Page 8521 upon by the court.
 8. The Court ruled upon an amended counterclaim, which was filed by attorney Paul Gozzi, without the knowledge or consent of then defendant William J. Zisk.
 9. The memorandum of decision, dated May 5, 1993 and revised Memorandum of Decision, dated May 18, 1993, rendered by the Honorable Daniel F. Spallone does not accurately address the foregoing.
 Objection to Motion to Terminate Stay and for Order Discharging Lis Pendens or Requiring Bond for Appeal, June 25, 2002. 
With respect to paragraph 1, this claim is discussed above in connection with paragraph "9(a) of plaintiff statement of preliminary issues on appeal. See pp. 12-13.
Paragraph 2 and the claim of the previous denial of the request for release of the lis pendens is discussed in connection with "c" of the Objection filed by plaintiff's counsel. See p. 17.
As to paragraph 3, it is wholly irrelevant whether plaintiff had paid the taxes on the property in the early 1990s. Furthermore, the court found that plaintiff presented no evidence on this allegation. See Memorandum of Decision, May 24, 2002, pp. 33-34. [126]
As to paragraph 4 and the claim regarding a prior action brought by Steven A. Rocco, this is discussed above in connection with paragraph "3" of plaintiff's preliminary statement of issues on appeal. See pp. 8-9.
Paragraphs "5," "6," "7," "8," and "9" relate to the prior action, That case has gone all the way to the Supreme Court of the United States. The judgment therein is final. The present appeal in this case is not a vehicle for revisiting and rehashing the issues in that case. And, the court notes here that the Appellate Court affording only a per curiam decision gives more than a hint that the appeal in the prior case did not have even colorable merit.
The court is of the opinion that plaintiff's chances for success in this appeal are nil.
In Griffin Hospital v. Commission on Hospitals Health Care,196 Conn. 451 (1985), it was stated that these factors "warrant consideration by the trial court in balancing process" involved in CT Page 8522 determining whether a stay on should be terminated: (1) the likelihood that the appellant will prevail; (2) the irreparability of the injury to be suffered from [a continuation of the the stay]; (3) the effect of a stay upon other parties to the proceeding; and (4) the public interest involved. Id., 456-457.
As to the first factor, the court has reviewed in detail above plaintiff's proposed claims on appeal. The court views plaintiff's chances on appeal as nil. This action is a waste since the issues were, for the most part, determined in the prior action.
Plaintiff is losing over $225 every day the stay continues. The erosion of plaintiff's equity can not be recovered in this action and it is unlikely it can ever be recovered. The blind tenacity of the plaintiff means he will string out this litigation for a long, long time. The plaintiff risks losing much if not all of their property due to the presence of the lis pendens which thwarts any sale as long as this appeal is in process.
The stay's effect on the defendant Walkley Heights Associates is financially devastating. Plaintiff William J. Zisk is risk free while the automatic stay and the lis pendens remain in place. The court clerk is now holding over $40,000 for plaintiff as a result of the partition sale in the prior action. At any time he can take that money which is the amount this court found was due him for the interest he had had in the property.
Continuation of the stay jeopardizes the purchase money mortgagees. As the plaintiff's equity erodes, the purchase money mortgagees are at risk of not being paid the full amount of what they are owed.
It is not clear that any public interest is involved other than the interest in having judgments with finality. But, whether the automatic stay is terminated or not will have no effect on that interest.
It is difficult to fathom what the plaintiff can get from this action even if he is successful on appeal, which is most doubtful. His complaint does not state with any specificity what interest he claims to have in the property although the statute requires same. C.G.S. § 47-31 (b). In the prior action, William J. Zisk counterclaimed and in one count sought to quiet complete title to himself as to four of the 32 acres . . . The court held against him on the counterclaims. It did find he owned an undivided 1/6 interest in the 32 acres. The property was partitioned by sale and the clerk holds over $40,000 for his 1/6 interest. Any other interest he claimed or could have claimed were found non-existent in the prior action. CT Page 8523
It is clear plaintiff intends to string out this litigation as long as he can. Plaintiff has not filed the papers with the Appellate Court required by P.B. § 63-4. Those papers should have been filed immediately after the appeal was filed, i.e., on or about June 13, 2002. On July 10, 2002, the Appellate Court ordered the case dismissed if the required papers were not filed by July 17, 2002. Thus, plaintiff has delayed the progress of the appeal by over a month.
A cursory look at the extensive (4 file folders) record of the prior case quickly shows that plaintiff William J. Zisk is persistent to a fault. He refuses to accept the fact that the issues he insists onpushing in this case have been finally decided against him. He refuses to accept the fact its over. The fat lady has sung! The court is convinced plaintiff will resort to every device to delay this action. That conclusion is based on William J. Zisk's actions in this case and in the prior case. Reargument on the denial of certiorari by the Supreme Court of the United States! That is but one instance of his spurious, dilatory tactics.
The court orders that the automatic stay provided for in P.B. § 61-11 is terminated immediately and the lis pendens filed by the plaintiff in Haddam land records is released and discharged.
Parker, J.